Lewis v. State of Ohio.

ment was laid upon October 1, 1828, for the term of twenty-one years, and the judgment was in favor of the defendant.

To this record the plaintiff objected, but it was admitted by the court, and a bill of exception taken. The verdict and judgment passed against the plaintiff, and thereupon he sued out his writ of error.

CASWELL & STARR, for the plaintiff in error.

STORER & FOX, contra.

*By the COURT:                                        [389

---

JAMES LEWIS v. THE STATE OF OHIO.

Courts can not be required to instruct a jury upon abstract propositions, but are bound to meet and decide every legal proposition that arises in a cause.

ERROR to the court of common pleas of Fairfield county.

Lewis was indicted and convicted of larceny. The indictment charged the goods stolen to be the property of Christian and William King. Upon the trial a bill of exceptions was taken, which stated, " that evidence was given, on the part of the prosecution, tending to prove that the chattels charged in the indictment to have been stolen by the prisoner, were the property of William and Christian King, and that it was feloniously taken from their warehouse." There was also evidence tending to prove that the chattels were purchased, in March last, in the name of William and Christian King; that William King at the

time of the purchase, and for four or five years previous thereto, was, by reason of mental imbecility, incapable of making or assenting to a contract, or transacting business of any kind. There was also evidence tending to prove a partnership between William and Christian King, namely, that a sign had been for several years kept up and continued over their warehouse, or store door, on 390] which were the names of William *and Christian King, and , that the books of the store were kept in their names.

The arguments and evidence being closed, the counsel for the prisoner prayed the court to instruct the jury: 1. If there was not sufficient evidence to satisfy them that there was a partnership between William and Christian King, and if the property alleged to have been stolen was purchased in the names of William and Christian King, at a time when William King was incapable of contracting, that the property vested in Christian King alone, and is improperly laid in the indictment as the property of William and Christian King. 2. If the jury should find that the property described in the indictment was stolen out of a warehouse of William and Christian King, yet that circumstance is not sufficient to sustain the allegation of property in the indictment, unless William and Christian King were proved to have been carrying on business in that warehouse jointly, or that the goods were received or retained there by the joint assent of William and Christian King, at a time when William King was capable of giving his assent. These instructions the court refused to give, but charged the jury that the evidence given was, in the opinion of the court, sufficient to prove a partnership between William and Christian King.

The jury found the prisoner guilty, and judgment having passed against him, he prosecuted this writ of error.

EWING, for the plaintiff in error:

The chattels alleged to be stolen are laid in the indictment as the property of William and Christian King. This allegation is required to be established by proof.

It seems, by what is recited in the bill of exceptions, that the prosecution attempted to establish this fact by proving: 1. A partnership between William and Christian King. 2. A purchase of the goods in their joint names. It was denied, on the part of the defendant, that the partnership was made out in evidence; and proof was adduced on his part tending to show that at the time

of the purchase of the goods William King was, by reason of mental imbecility, incapable of contracting.   The first instruction, which was asked *and refused, arose from this state of the   [**391** pleadings and evidence.

The question of partnership was one for the determination of the *jury*, not of the *court*.   The defendant was not estopped from denying its existence; and the jury might, perhaps, have thought the proof insufficient to establish it.   The court, therefore, were bound, if requested, to instruct the jury as to the law which would apply to the case, on the supposition that the point should not be sustained.

Casting the pre-existing partnership out of the case, the instructions asked were, in substance: That goods purchased in the name of A. and B., at a time when A. was incapable of contracting, vested no property in A., and that the goods could not properly be laid in an indictment as the property of A. and B.   This would seem almost a self-evident position.   Goods are purchased by B., or his agent, in the name of A. and B., without the assent of A.   It does not make A. a partner of B. in this property, for a mutual assent is necessary to create a partnership.   Watson on Part. 5.   It would not vest the property in A., as a gift, for delivery and *acceptance*, that is, a contract to receive, is essential to the validity of a gift of chattels.   2 Kent's Com. 353–355, inclusive, and cases there cited.

*Second.* The second instruction asked and refused was based on the hypothesis that the jury should find the goods to have been stolen from a warehouse of William and Christian King, in which they were not carrying on business jointly, and in which the goods were *not* received or retained by their joint assent.   And the court were asked to instruct the jury, that the goods being found by the defendant, in the warehouse, *under those circumstances*, does not, in contemplation of law, make them the goods of William and Christian King.

It will be found, on consulting the cases, that the special property in goods, which is holden sufficient to sustain trover, or an allegation of property in an indictment, is always found on the actual or legal custody.   Russell on Crimes, 1132.   The main fact, that these goods were in a house which was the joint property of A. and B., gave them no custody or possession of the goods, and no property in them, *either qualified or general.   It had been   [**392** otherwise, had the goods been there in the course of a joint business

between A. and B., or received there by their joint assent; but the terms of the exception precludes that state of things; and the refusal to instruct, if sustained at all, must be supported on the broad position that ownership of the close draws after it a custody of, or property in, any personal chattel which may chance to be placed upon it.

H. H. HUNTER, contra:

In the case two points are made for the consideration of the court, both of which, however, relate to the same thing, namely: the right of property in the goods alleged to have been stolen. The first is, whether the allegation of the indictment of property in William and Christian King, in the goods, is supported by proof of the fact that the property was purchased in the name of W. & C. King, at the time when William King was incapable of contracting, by reason of mental imbecility.

The ground of objection which would seem to be raised by the bill of exception, to the sufficiency of this proof, is this: that by reason of the purchase being made at a time when William King was incapable of assenting to a contract, the whole property vested in Christian King. We believe this position to be unsound. If William King had been of sound mind, for the same reason that the whole property is claimed to vest in Christian King, an undivided moiety would have vested in William. We ask, if this be the case, how it is possible the want of capacity in William can entitle Christian to any greater interest than he otherwise would have been? We should like to be informed of the legal principle so efficacious in its operation. We believe there is none such, and whatever may have become of the interest of William King, on account of his incapacity, Christian is not vested with it. If Christian, by the purchase, only became entitled to a moiety of the goods, admitting William to have been sane, there is no good reason that he should be entitled to the whole, on account of William's insanity. In truth, Christian would have no better right to claim 393] the interest of *William, on account of William's insanity, than would any other person, a total stranger, if you please. The most that he could claim would be possession; and this he would hold as a trustee, liable to account as such to a legally constituted representative of William, whether guardian in lunacy, heir, administrator, or other representative.

These reflections, we believe, will amply satisfy the mind that the allegation of the indictment of property, in William and Christian King, is proper, and that it would not have been proper, as claimed by the exception, to have laid it as the property of Christian alone. But notwithstanding the whole property may not have vested in Christian King, by the purchase, yet it is worthy of inquiry whether William King, by the purchase being made in his name at a time when he was insane, could acquire an ownership or interest in the goods. This inquiry may be considered as depending upon the question whether a lunatic can take property by purchase. That he can there is no doubt, both from reason and authority. It is laid down in 1 Coke, 2 b, that a man of non-sane memory may, without the consent of any other, purchase lands. If land, he certainly may goods. All the difference between lands and goods, in transferring title, consists in the form of doing it. In the case of lands it must be by deed—in that of goods it may be by parol. It is true where the purchaser, at the time of the contract, happens to be a lunatic, his contract may be rescinded on account of his lunacy; but notwithstanding this is the case, he may, at a lucid interval, confirm his contract. And until it is rescinded, it is presumed such a right of property in the goods purchased would vest in the purchaser, so as to enable him to bring *trover, trespass,* etc. In such case it would not be allowed to the defendant to say that the plaintiff, at the time he contracted, was of non-sane memory, and therefore not bound by his contract. Such a defense would sound strangely; it would sound equally strange in the mouth of a thief who had stolen the goods. The law will not permit the lunacy of an individual to be used to his prejudice. It is true he is not bound by his contract, but, as we have said, he may confirm it at a lucid interval. It is not absolutely void, but merely voidable. 2 Black. Com. 291. If, therefore, *Christian King, by the purchase being made in his [394 and the name of William King jointly, acquired an ownership in the goods, there is no legal objection which can be raised, on account of the lunacy of William, why he should not also have acquired an ownership; for if the principles we have first laid down be correct, had William stood alone in the purchase, right of property in the goods might lawfully have passed to him. And, as we have already remarked, the name of Christian being used with that of William should not determine William's right. The

broadest ground in favor of the defendant below, on which the question can be placed, is to let it rest upon the inquiry whether a lunatic can acquire, during his lunacy, such right to property as will warrant the allegation of property in him in an indictment. That he can, we believe, is rendered clear from what has already been said.

We shall, therefore, leave this question growing out of the first exception. That growing out of the second is more obviously, if possible, in favor of the prosecution.

By a careful analysis of the second exception, it will be found to resolve itself into this: Whether proof that goods stolen out of a warehouse of W. and C. King, without its being also proved that W. and C. King transacted business there jointly, or that the goods had been received or retained there by the joint assent of W. and C. King, at a time when W. King was capable of assenting, is sufficient proof of ownership of the goods in W. and C. King to support the allegation of the indictment to that effect?

Two hypotheses are raised by the exception. The first is, whether it is indispensably necessary, in addition to the proof of the property being stolen from the warehouse of W. and C. King, to have also proved that W. and C. King transacted business there jointly? We deny that it was indispensably necessary, in proving property in W. and C. King, in addition to the fact of its having been stolen from their warehouse, to have proved that they transacted business there jointly. Let us suppose that the property was proved to have been bought and paid for by W. and C. King, or that they had manufactured it, or that it was theirs in any other way, and that it was actually stolen from a warehouse **395]** *owned by them, would it be at all essential to prove that they transacted business in the warehouse? Why, certainly not. How, then, have the court erred in refusing to give the instruction asked in the first branch of this exception? They are asked to say to the jury that in addition to the fact of the property being stolen from the warehouse of W. and C. King, it was necessary for the prosecution to have proved that W. and C. King transacted business in that warehouse jointly. This is the abstract proposition, and we say that the court did right in refusing so to instruct the jury. For if there had been the most conclusive evidence of ownership otherwise made out, if the court had instructed the jury as required, and if the jury had strictly observed the in

struction, they must have acquitted the defendant, if there was no proof before them that W. and C. King jointly transacted business in the warehouse. Absurd and erroneous as this first branch of the exception is, the second is equally or more absurd than the first. What is it? Why the counsel for the defendant asks the court to instruct the jury that proof of the fact that the goods stolen from *a* warehouse of W. and C. King does not support the allegation of property in W. and C. King, unless it was also proved that the goods had been received and retained in the warehouse by the joint assent of W. and C. King, when William King was capable of assenting.

Why, in the name of common sense, attach as indispensable accompanying proof that it was necessary to be received and retained there by the joint assent of W. and C. King, at a time when William was capable of assenting? Would nothing short of this answer the purpose? Suppose that a sufficient proof of a pre-existing and undissolved partnership between W. and C. King had been given to the jury, was it necessary, in addition to that, to have proved the reception and retention of the goods, in the warehouse, by the joint assent, at a time when William King was capable of assenting? Strange idea this! If there were a subsisting partnership between William and Christian, at the time the goods were received or retained there, although William at the time may have been incapable of assenting, yet the assent of Christian would have been equivalent to their joint *assent. This [396 must be the case, unless the insanity of a partner works a dissolution. If the partnership were dissolved at the time of the assent given, then, it is true, the assent of one partner does not *ipso facto* dissolve the partnership. In no instance is this the case; in some cases, however, it forms a ground upon which a court of chancery may decree a dissolution of a partnership. This is the extent. Gow on Part. 273, and the cases there referred to. It is really strange that it should be insisted upon, as it certainly is, by the bill of exceptions, that it was necessary, in addition to the fact of the goods being stolen from a warehouse of W. and C. King, to prove the particular fact of their having been received and retained there by the joint assent, etc. Would not, we ask, any other evidence but this answer the purpose? Many other species of evidence, we think, might have been resorted to, equally clear, and equally conclusive. But yet we find the counsel for the

defendant urging it upon the court to instruct the jury that this was necessary; that without it the allegation of property in W. and C. King was not supported. Not only are the court required to say to the jury that the goods must have been received and retained by the joint assent, and this joint assent must be given at a time when William King was capable of giving his assent. Now it is, because the court have not gone the whole length in giving this instruction, that the writ of error is brought. Nothing short of the whole instruction would satisfy the demand upon the court. Yet, as we have already remarked, if there were a subsisting partnership between W. and C. King, the assent of C. King would be equivalent to their joint assent, and this, although William, at the time of the assent given, might be insane. But the instruction required did not permit the court so to lay down the law to the jury; but, on the other hand, if they had given the instruction prayed, they would have been bound to say, notwithstanding there might have been a partnership subsisting yet, if William was incapable of assenting, the assent of Christian was not equivalent to a joint assent. We submit the point to the court, which course of instruction would be the sounder in law. That there was strong and conclusive proof, if true, of the partnership, appears 397] fully by the reciting part of the *bill of exceptions. Yet that proof would clearly have been taken from the jury, if the court had given the instructions required.

Mr. LEONARD presented an argument for the state.

Mr. SWAN, one for the plaintiff in error.

By the COURT:

The court can not be called upon to charge the jury upon abstract propositions, but only those arising upon the evidence. But to refuse such instructions as properly arise in the case is error. 1 Cranch, 309, 318; 6 Wheat. 75.

By the first exception, we understand the defendant designed to contest the fact of partnership; and, for this purpose, he relied upon the legal proposition, that property purchased for a lunatic does not vest in him. The fact of partnership was material to be established by the state; and that it was material, is matter of law. The legal proposition, that the property thus purchased

could not vest, would go far to protect the defendant, if settled in the affirmative. Upon these legal propositions, the bill of exceptions states, the court below refused to charge, but gave an expression of their opinion upon the question of fact, as to the sufficiency of the proof. We are of opinion that the court erred in refusing to charge the jury upon the legal propositions.

It is unnecessary to notice the second exception.